**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| SRINIVASAN VASUDEVAN, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:26-cv-211 |
| | ) |
| v. | ) Hon. Judge Matthew F. Kennelly |
| | ) |
| UNIVERSITY OF CHICAGO, et al., | ) Hon. Magistrate Judge M. David Weisman |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY**
**DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 73**

Plaintiff Srinivasan Vasudevan, a term-limited, non-tenured professor, at the University of Chicago (the "University") sues the University for breach of a collective bargaining agreement covering his employment, based on allegations that the University improperly conducted his performance review, resulting in the non-renewal of his contract. As a predicate to that claim, he sues his union Defendant Service Employees International Union Local 73 ("Local 73" or the "Union") for breach of its duty of fair representation with respect to the processing of his grievances against the University. ECF No. 7 (Count I). The Union respectfully moves to dismiss the claim against it under Rule 12(b)(6). At bottom, Vasudevan complains that the Union ceased pursuing his grievance to an arbitration hearing after the Union agreed to a settlement with the University at a mediation conducted by the arbitrator to which he now objects. As a matter of law, however, a Union has the authority to settle a grievance over the objection of an employee, where the Union's decision is not arbitrary, in bad faith, or discriminatory. Here, Vasudevan alleges no facts to create a plausible inference of arbitrary, bad faith, or discriminatory conduct by the Union, and his duty of fair representation claim must be dismissed.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Vasudevan is an assistant instructional professor employed by the University in its economics department. ECF No. 7, ¶ 1. In that position, he is represented by Defendant Local 73. *Id.*, ¶ 3. He is covered by a collective bargaining agreement ("CBA") between the University and Union with a term of May 1, 2024 to April 30, 2029, for non-tenure tracked academic appointees, collectively referred to as "Lecturers." *Id.*, ¶ 19; *see also* CBA (Exhibit A, ¶ 2 & Ex. 1, preamble and art. 1, § 1).[1] The CBA contains a grievance procedure ending in arbitration for claims of breach of the agreement. ECF No. 7, ¶¶ 24-25; CBA, art. 8. If a grievance is not resolved through step 3 of the grievance procedure, only the Union may refer the grievance to the step 4 arbitration process. CBA, art. 8, § 3 (step 4).

In September 2024, Kotaro Yoshida, a Co-Director of Undergraduate Studies in the economics department, notified Vasudevan that they needed to schedule a classroom observation as part of the University's performance review process. ECF No. 7, ¶ 26. The classroom observation was scheduled for October 22, 2024. *Id.*, ¶ 28. For observations, the CBA requires the University to notify the lecturer of the identity of the observers 14 days beforehand. *Id.*, ¶ 22.A; CBA, art. 18, § 5.A. While Yoshida identified three of the observers in advance of that deadline, Vasudevan was notified of two additional observers only a day or two before the observation, including Derek Neal an economics professor. ECF No. 7, ¶¶ 13, 26, 28. Following the observation, Neal informed Vasudevan that he found his performance deficient and that Neal would not allow the University to renew Vasudevan's contract. *Id.*, ¶¶ 34-36. Lecturers, such as Vasudevan, work on term contracts, and a successful performance review, including classroom

---

[1] Exhibit A, at Ex. 1, attaches the CBA referenced in the Complaint, *see, e.g.,* ECF No. 7, ¶ 19, and central to plaintiff's claims, which the Court may consider on a motion to dismiss. *See Taha v. Int'l B'hood of Teamsters, Local 781*, 947 F.3d 464, 470 n.3 (7th Cir. 2020).

2

observation, is generally required for a contract to be renewed. *See* CBA, arts. 10 & 18, § 1.

On November 21, 2024, Vasudevan filed a grievance through the Union (the "First Grievance") alleging the classroom observation was conducted without the 14-day advance notice of the names of the observers as required by the CBA. *Id.*, ¶¶ 37. In the course of his grievances against the University, Vasudevan was assisted by five Union representatives: Andrew Yale, Loren Ezra Whitman, Shayla Nguyen, Wesley Payne, and the Union's General Counsel, Matthew Carpenter. *Id.*, ¶ 3.

In the employee name field of the First Grievance, the Union misspelled plaintiff's last name as "Vasubevan" and entered the name of the wrong employee as the grievant in the statement of the grievance. *Id.* A grievance meeting was held, and the University denied the grievance in a Step 3 answer dated December 13, 2024. *Id.*, ¶ 38. The University argued that Vasudevan was aware of three out of the five observers at least 14 days in advance and was not prejudiced by not knowing the identity of the other two. *Id.* Additionally, the University asserted that the CBA did not specify a remedy for a technical breach of the procedural 14-day notice requirement. *Id.*

Between January and April 2025, Vasudevan had multiple further communications and meetings with University officials concerning his performance review and Vasudevan's application for "progression" (akin to renewal of his contract and promotion). ECF No. 7, ¶¶ 40-48; CBA, art. 10. On April 4, 2025, the University notified Vasudevan that he had not met the standards for progression and offered him a terminal year contract. ECF No. 7, ¶ 47.

On April 21, 2025, Vasudevan filed a second grievance through the Union (the "Second Grievance"). *Id.*, ¶ 49. While Vasudevan's name was correctly spelled in the name of the employee and statement of the grievance fields of the grievance, it was misspelled as "Srunivasn Vasudevan" in the settlement desired field. *Id.* The Second Grievance alleged the University

violated CBA provisions on performance reviews, including "concerning notice at least three weeks prior to the performance review" and "an opportunity to submit a written response to the performance review before a decision." *Id.*, ¶ 50. *See* CBA (current CBA, art. 18, § 4(f) & (g)). The Second Grievance requested for Vasudevan's performance review to be redone. *Id.*, ¶ 51.

A grievance meeting was held on April 30, 2025, at which the University did not provide "substantive or specific reasons for Plaintiff's non-progression and did not provide the performance review report for Plaintiff's review and written response." *Id.*, ¶ 52. Despite Vasudevan's requests for a step 3 grievance meeting, the University never held one. *Id.*, ¶ 53. Nguyen told Vasudevan "to cease further discussions on the ground that such discussions were not 'privileged.'" *Id.* Carpenter also told Vasudevan "not to submit further internal complaints to the University following Plaintiff's complaint against [University Senior Instructional Professor Victor] Lima for abuse of authority." *Id.*

Vasudevan's grievances were advanced to the arbitration stage. *Id.*, ¶¶ 54-63. The Union's General Counsel Carpenter told Vasudevan that he would not personally attend the arbitration hearing. *Id.*, ¶ 54. He also advised that the "grievances would likely be denied, urged Plaintiff to 'settle on the one issue most important to [him],' and stated that once a decision issued, the Union would treat the matter as 'closed,' with 'no appeal or additional proceedings.'" *Id.*

On July 31, 2025, Vasudevan emailed Whitman, Nguyen, and Yale, requesting copies of the grievances, to which Whitman responded: "'The Union does not provide internal documentation. Any questions about what will be presented during your arbitration process should go to Shayla, the attorney handling your case.'" *Id.*, ¶¶ 3, 55. On September 3, 2025, Vasudevan emailed again requesting the grievances, and Yale referred him to Carpenter. *Id.* Vasudevan contacted Carpenter, and on September 9, 2025, Carpenter provided the grievances to Vasudevan. *Id.*

4

On August 5, 2025, the parties held a mediation before the arbitrator. *Id.*, ¶ 56. Vasudevan describes the mediation as follows: "Payne and Nguyen communicated caucus proposals to the Employer's counsel, and Plaintiff objected that this was done without Plaintiff's authorization. Payne and Nguyen urged Plaintiff to accept a 'Term Sheet' under time pressure." *Id.* After the mediation, Vasudevan followed up with Nguyen on August 11 and 20, 2025, "regarding receipt of a written settlement offer." *Id.*, ¶ 57. On August 21, 2025, Nguyen emailed Vasudevan "a settlement agreement that Nguyen had received on August 18, stating, 'Please see attached. You have until September 7 to review and sign the agreement. Please let me know if you have any questions.'" *Id.* Vasudevan "responded that the agreement differed from the terms Plaintiff understood were discussed during mediation." *Id.*

On August 26, 2025, "Nguyen asked Plaintiff to send the signed agreement by September 6 for Nguyen's review, thereby affording Plaintiff four (4) fewer days than the twenty-one (21) days required for Plaintiff's review." *Id.*, ¶ 58. On August 31, 2025, Vasudevan "emailed Carpenter, [University Assistant Vice President, Human Resources, Brett] Leibsker, Nguyen, and Yale declining to settle the grievances and requesting resumption of the arbitration proceedings that had been paused by a last-minute mediation effort that ultimately proved unsuccessful." *Id.*, ¶ 59. "That same day, Carpenter stated that the Union would withdraw Plaintiff's grievances unless Plaintiff accepted settlement terms, writing, 'If you do not intend to abide by the terms mutually agreed to at mediation, the Union will withdraw the grievances.'" *Id.*, ¶ 60. "On September 2, 2025, Carpenter again stated that the Union would not proceed, writing that 'arbitration is not yours to demand' and that 'the Union will not be demanding that we proceed.'" *Id.*, ¶ 61. "On the same date, Carpenter accused Plaintiff of having 'denigrated Local 73' and of having 'belittled' Nguyen." *Id.*

On September 23, 2025, after Vasudevan "followed up regarding the status of the grievances, Carpenter stated in writing, 'We haven't done anything with the grievances except forwarding your note to Arbitrator [redacted] at your request.'" *Id.*, ¶ 62. That month, Vasudevan filed charges against the University and the Union with the National Labor Relations Board. *Id.*

Vasudevan then filed the present suit against the University and the Union. He brings one claim against the Union alleging that the Union breached its duty of fair representation, as a predicate to his breach of contract claim against the University under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). ECF No. 7 (Count I).

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiff's "complaint must 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaminski v. Elite Staffing, Inc.,* 23 F.4th 774, 776 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] complaint must include facts showing a plausible—not merely 'conceivable'—entitlement to relief." *Taha v. Int'l B'hood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Iqbal,* 556 U.S. at 683). The Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Id.* However, the Court "may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Id.*

## I.     Plaintiff Fails to Allege a Plausible Claim that the Union Breached its Duty of Fair Representation.

Vasudevan alleges one claim against the Union for breach of its duty of fair representation. ECF No. 7 (Count I). "When union members sue their employer for breach of contract under section 301 of the LMRA, they must also state a prerequisite claim of breach of their union's

duty of fair representation." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013) (citing *Vaca v. Sipes*, 386 U.S. 171, 186-87 (1967)). "This is because ordinarily, union members must first use the grievance procedures specified in the CBA rather than directly sue the employer; only when the union has breached its duty to fairly represent the union members in that grievance process may the union members bring a claim against their employer." *Id.*

A union's duty of fair representation arises from its exclusive representative status conferred by the National Labor Relations Act. *Id.*, at 915-16; *see also* 29 U.S.C. § 159 ("Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining . . ..."). A union must exercise its authority "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177. "A union has wide latitude in performing this obligation, however." *Yeftich*, 722 F.3d at 916. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. Each theory of breach must be considered separately. *Yeftich*, 722 F.3d at 916.

Here, Vasudevan takes issue with the Union's handling of his grievances, ultimately declining to take them to arbitration. ECF No. 7, ¶ 75. The Supreme Court long ago established, however, that an "individual employee has no absolute right to have his grievance arbitrated" and "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious." *Vaca*, 386 U.S. at 195. Thus, "declining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair

7

representation." *Yeftich*, 722 F.3d at 916. "Rather, '[t]o prevail on a claim that his union violated its duty of representation by dropping a grievance, a plaintiff-member must show that the union's decision was arbitrary or based on discriminatory or bad faith motives.'" *Id.* (quoting *Trnka v. Local Union No. 688, UAW*, 30 F.3d 60, 61 (7th Cir. 1994)). Vasudevan has failed to allege facts to create a plausible claim under any of the three alternatives.

### A. Plaintiff fails to allege arbitrary conduct by the Union.

"'Whether a union's actions are arbitrary calls for an objective inquiry'" *Yeftich*, 722 F.3d at 916 (quoting *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003)). Courts apply an "'extremely deferential standard'" of review. *Taha*, 947 F.3d at 470 (quoting *McKelvin v. E.J. Brach Corp.*, 124 F.3d 864, 867 (7th Cir. 1997)). This is "'because Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative.'" *Yeftich*, 722 F.3d at 917 (quoting *Ooley v. Schwitzer Div.*, 961 F.2d 1293, 1302 (7th Cir. 1992)). "'It is not [a court's] job to substitute [its] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call.'" *Taha*, 947 F.3d at 471 (cleaned up, quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1177 (7th Cir. 1995)).

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (citation omitted, cleaned up). "While 'a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion,' *Vaca*, 386 U.S., at 191, it 'has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer,' *Neal*, 349 F.3d at 369." *Yeftich*, 722 F.3d at 917. At the pleading stage, the plaintiff must allege "factual details to support his claim that the union irrationally compromised" his grievance. *Taha*, 947 F.3d at 472.

8

Vasudevan alleges that the Union breached its duty by "acting arbitrarily and in bad faith, including by misfiling grievances, failing to correct known errors, discouraging or blocking Step 3 review, threatening withdrawal of grievances to coerce settlement, and refusing to pursue arbitration despite Plaintiff's timely requests." ECF No. 7, ¶ 75. Those conclusory allegations should not be accepted as true on a motion to dismiss, and plaintiff fails to buttress them with specific factual allegations to state a plausible claim of arbitrary conduct. In *Yeftich*, for comparison, the court found the following, conclusory allegations insufficient to state a plausible claim for arbitrary or bad faith conduct by a union:

> [T]he plaintiffs filed hundreds of grievances about Navistar's actions in a continuous and continuing basis through to the present; the union intentionally misled the plaintiffs as to the status of the grievances when in fact the union invidiously diverted, stalled, and otherwise terminated and abandoned the grievances; the union misled the plaintiffs by telling them that hundreds of such grievances filed over a period of years await further action by high union officials when in fact, upon information and belief, none have been processed and all are dead; and the union refused to give the plaintiffs copies of the CBA.

*Yeftich*, 722 F.3d at 916 (cleaned up).

### 1. Any negligence by the Union in completing the grievance forms does not state a claim for breach of the duty of fair representation.

With regard to "misfiling grievances" and "failing to correct known errors," presumably Vasudevan is referring to his allegations that union representatives in some instances misspelled his name, included the wrong name in one field, and "omitted the name of an additional observer of whom Plaintiff had not been notified" on his grievances. ECF No. 7, ¶¶ 37 & 49. Such suggestions of negligence do not, however, allege a plausible claim of arbitrary conduct by the Union. "'[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation.'" *Neal*, 349 F.3d at 370 (*quoting USW v. Rawson,* 495 U.S. 362, 372-73 (1990)).

A plaintiff must also allege facts creating a plausible inference that "he 'was actually harmed

9

by the union's actions' and that 'the outcome of the grievance would probably have been different but for the union's activities.'" *Matthews v. Mke. Area Local Postal Workers Union,* 495 F.3d 438, 441 (7th Cir. 2007) (cleaned up, quoting *Garcia*, 58 F.3d at 1176-77)). Vasudevan, however, does not allege how the Union's clerical errors prejudiced the processing of his grievance. His allegations do not suggest that the University denied his grievances, nor took any other negative action, due to the errors in the grievance forms. *See* ECF No. 7, ¶¶ 37-39, 49-56. The grievances were advanced to arbitration, before the arbitration was suspended for settlement mediation. *See id.*, ¶¶ 56-57. *See also Matthews*, 495 F.3d at 442 ("There is no evidence that the outcome of the grievance would have been different had it been filed earlier or had it detailed all the facts surrounding the exchange between Matthews and Montgomery.").

### 2. Plaintiff's conclusory allegations regarding discouraging or blocking step 3 review do not state a plausible claim of arbitrary conduct.

With respect to his allegation that the Union "discourage[ed] or block[ed] Step 3 review," it is not clear to what Vasudevan is referring. ECF No. 7, ¶ 75. The University provided a Step 3 answer, denying his First Grievance. *Id.*, ¶¶ 38-39. With respect to the Second Grievance, Vasudevan alleges that despite his requests to the University, he did not receive a Step 3 meeting or answer. *Id*, ¶ 53. He also alleges that Nguyen told him "to cease further discussions on the ground that such discussions were not 'privileged,'" and that Carpenter told him "not to submit further internal complaints to the University." *Id.* There is nothing irrational about a union representative advising a grievant not to communicate with an employer about a case because those communications would not be privileged, and could be used against the employee in the grievance or arbitration proceedings. *Cf.* 735 ILCS 5/8-803.5 (Illinois privilege for confidential union agent and union member communications). And Vasudevan alleges no facts to create a plausible inference that the Union's advice to him somehow discouraged or blocked third-step

review. Moreover, as noted, the grievances advanced past the third step to arbitration before the settlement mediation. *See* ECF No. 7, ¶¶ 56-57. So, again, Vasudevan alleges no facts to create a plausible inference that the Union representatives' advice to him somehow prejudiced his grievance.

### 3. The Union's decision not to pursue the grievances further, following Vasudevan's rejection of settlement, is not irrational.

Lastly, Vasudevan alleges that the Union "threaten[ed] withdrawal of grievances to coerce settlement, and refus[ed] to pursue arbitration despite Plaintiff's timely requests." ECF No. 7, ¶ 75. These allegations also do not create a plausible inference of irrational conduct by the Union.

As noted, an "individual employee has no absolute right to have his grievance arbitrated," even if it were proven "that the underlying grievance was meritorious." *Vaca*, 386 U.S. at 195. It is similarly beyond dispute that a union has no duty to obtain an employee's consent before the union agrees to settle with an employer and withdraw a grievance short of arbitration. So long as its reasons for doing so are not arbitrary, bad faith, or discriminatory, a Union may settle a grievance over the employee's objection. *See Vaca*, 386 U.S. at 192 (holding union does not breach duty "merely because it settled the grievance short of arbitration"); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) ("Unions are free to negotiate and accept settlements even without the grievants' approval."); *Matthews,* 495 F.3d at 442; *Anthony v. UAW Local 1268*, No. 3:24 C 50166, 2025 U.S. Dist. LEXIS 41521, at *17 (N.D. Ill. Mar. 7, 2025); *Sullers v. Int'l Union of Elevator Constr. Local 2*, No. 20 C 7696, 2024 U.S. Dist. LEXIS 56223, at *17-18 (N.D. Ill. Mar. 28, 2024), affd., 141 F.4th 890 (7th Cir. 2025); *Clark v. Int'l Union UAW*, No. 4:23-cv-04065, 2024 U.S. Dist. LEXIS 46063, at *11-12 (C.D. Ill. Mar. 15, 2024); *Beraki v. Crescent Hotels & Resorts*, No. 21-1113, 2022 U.S. Dist. LEXIS 63312, at *19-20 (D.D.C. Apr. 5, 2022); *Harris v. Amalg. Transit Union Local 689*, 825 F. Supp. 2d 82, 87-88

(D.D.C. 2011); *Barrett v. Local 804 Union (IBT)*, No. 18-CV-2046, 2022 U.S. Dist. LEXIS 60892, at \*18-20 (E.D.N.Y. Mar. 31, 2022); *Canady v. Union 1199*, 253 F. Supp. 3d 547, 556 (W.D.N.Y. 2017); *Stiles v. Chem. & Prod. Workers' Union, Local No. 30*, 658 F. Supp. 2d 310, 325 (D.N.H. 2009); *Brown v. Gino Morena Enters.*, 44 F. Supp. 2d 41, 45 (D.D.C. 1999).

Again, plaintiff alleges no facts to create a plausible inference of irrational action by the Union. The Union's processing of the grievances to the point of a mediation by the arbitrator, cannot be characterized as "perfunctory." *Vaca*, 386 U.S., at 191. *See* ECF No. 7, ¶¶ 56, 59. Moreover, Vasudevan alleges that the Union's General Counsel Carpenter advised him that the "grievances would likely be denied" and for that reason urged him to "settle on the one issue most important to" him. *Id.*, ¶ 54. As the cases cited in the previous paragraph demonstrate, it is not irrational for a Union to push settlement—even over the employee's objection, when the Union has determined the chances at arbitration did not warrant pursuing the case further.

It is also entirely appropriate for a union to advise an employee, as Carpenter did, that if an arbitration decision were issued, there would be no appeal. *See* ECF No. 7, ¶ 54. As a matter of law, unions have no duty to appeal an arbitration award. *See Shores v. Peabody Coal Co.*, 831 F.2d 1382, 1384 (7th Cir. 1987) ("[A] union's failure to contest an arbitration award in court cannot be a breach of the duty of fair representation.").

Thus, it is not improper or irrational for a Union, after reaching a settlement with an employer at mediation, to advise the employee that the Union will not pursue the grievance further even if the grievant rejects the settlement. *See* ECF No. 7, ¶¶ 56-57. Vasudevan's characterization of this as an improper "threat" to coerce settlement is simply wrong as a matter of law. *See* ECF No. 7, ¶ 75.

In *Vaca*, for example, the union decided that it could not succeed at arbitration, and

12

therefore, proposed to accept the employer's offer to refer the employee to rehabilitation rather than reinstatement. *See Vaca*, 386 U.S. at 175. The employee rejected the offer and demanded that the Union take his grievance to arbitration instead, but the Union refused and dismissed the grievance. *See id.*, at 175-76. The Court held as a matter of law that the union did not breach its duty of fair representation despite withdrawing the grievance after the employee rejected the resolution worked out between the Union and employer. *Id.*, at 194-95.

*Vaca* and the other cases cited above, thus, make clear that the Union, not the employee, controls the terms of settlement, and the Union may settle and withdraw a grievance over the employee's objection. As the Seventh Circuit has explained, a union is "entitled to enjoy a somewhat different perspective than the individual employee it represents in a grievance matter." *Garcia*, 58 F.3d at 1176. In addition to the merits of the grievance, it is rational, indeed proper, for the union to consider that "the union's own credibility, its integrity as a bargaining unit and the interests of all its members may be at stake." *Id.* Thus, it is rational for the Union to consider the impact on the Union's credibility with the employer and its ability to reach settlements in future cases for other members, if the Union were to back out of mediated settlements and press forward with arbitration. It is also rational and proper for a Union to consider whether it is a wise use of union resources to continue to press grievances through the costliest phase of arbitration that have a doubtful chance of success, or of a significant remedy, and for which the union had already reached a settlement with the employer through mediation. *See Neal*, 349 F.3d at 369 (union "has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer").

In sum, Vasudevan has failed to allege a plausible claim of arbitrary conduct by the Union.

### B. Vasudevan Alleges No Bad Faith Conduct by the Union.

Vasudevan also fails to allege a plausible claim of bad faith conduct by the Union. "Whether

13

a union acted in bad faith calls for a subjective inquiry and requires proof the union acted (or failed to act) due to an improper motive." *Taha*, 947 F.3d at 472. "A conclusory allegation of bad faith conduct, without more, does not show illegality." *Id.* "Bare assertions of the state of mind required for the claim—here 'bad faith'—must be supported with subsidiary facts." *Yeftich*, 722 F.3d at 916.

Here, Vasudevan simply asserts that the Union acted in "bad faith" in doing the things discussed above. *See* ECF No. 7, ¶ 75. Yet, he alleges no facts to create a plausible inference that the Union had any subjective bad faith motive. As discussed above, all of the Union's actions as alleged are entirely consistent with rational, proper conduct. *Yeftich*, for example, affirmed dismissal of a complaint where the plaintiffs "offer[ed] nothing to support their claim of bad faith apart from conclusory labels—that the unnamed union officials acted 'invidiously' when they failed to process the grievances, or simply that the union's actions were 'intentional, willful, wanton, and malicious.'" *Yeftich*, 722 F.3d at 916. The court explained that the plaintiffs "suppl[ied] no factual detail to support these conclusory allegations, such as (for example) offering facts that suggest a motive for the union's alleged failure to deal with the grievances." *Id.* Vasudevan's bad faith claim similarly fails.

### C. Vasudevan alleges no discriminatory conduct by the Union.

It does not appear that Vasudevan even attempts to claim the Union acted with a discriminatory motive. *See* ECF No. 7, ¶ 75 (alleging only arbitrary and bad faith conduct). In any event, his facts do not create a plausible inference of discriminatory conduct either. Like a bad faith claim, a duty of fair representation claim alleging discrimination requires a subjective inquiry into the union's motive. *See Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 694 (7th Cir. 2021). "To breach the duty of fair representation, discriminatory conduct must be 'intentional, severe, and unrelated to legitimate union objectives.'"). *Id.* (quoting *Amalg. Ass'n of*

14

*Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).

Vasudevan alleges no discriminatory motive, nor that he was treated differently than any other member of the Union. Thus, he does not plausibly allege a breach of the Union's duty of fair representation under this theory either, and his claim against the Union should be dismissed.

### CONCLUSION

The Union respectfully requests that plaintiff's Count I, breach of duty of fair representation claim against the Union should be dismissed and that the Union be dismissed from the case.

Respectfully submitted,

Dated:  May 11, 2026

/s/ George A. Luscombe III

George A. Luscombe III
DOWD, BLOCH, BENNETT, CERVONE
  AUERBACH & YOKICH LLP
8 South Michigan Avenue, 19th Floor
Chicago, Illinois 60603
(312) 372-1361 – Telephone
(312) 372-6599 – Facsimile
Email: gluscombe@laboradvocates.com

Alicia Weber
Senior Staff Attorney
SEIU LOCAL 73
300 S Ashland Ave. Suite 400
Chicago, IL 60607
(312) 402-4968 – Telephone
Email: aweber@seiu73.org

*Attorneys for Defendant*
  *Service Employees Int'l Union Local 73*