**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SRINIVASAN VASUDEVAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 26-cv-00211 |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| | ) | Hon. Magistrate Judge M. David Weisman |
| THE UNIVERSITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**UNIVERSITY DEFENDANTS' AMENDED MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT[1]**

In his Complaint, Plaintiff attempts to parlay his dissatisfaction with academic judgment, union representation, and routine leave administration into federal and state law claims. Each count in the Complaint fails for the same fundamental reason: the Complaint alleges no unlawful conduct — only Plaintiff's disagreement with professional judgment and discretionary decision-making.

Count I does not state a claim for a breach of a union's duty of fair representation; it catalogues Plaintiff's disagreements with how the Union exercised its discretion. Settled precedent forecloses liability on that basis. Without a plausible claim for breach of duty of fair representation, Plaintiff's hybrid § 301 claim necessarily fails in its entirety.

The defamation claim in Count II fails due to a single, undisputable reality: faculty members exercised academic judgment during a formal review process and concluded that Plaintiff did not meet standards for progression. Illinois law draws an unambiguous line between

---

[1] The following Defendants bring this Amended Motion: the University of Chicago, Ingrid Gould, Min Sok Lee, Brett Leibsker, Victor Lima, Sherry Manick, Derek Neal, Eric Richert, Azeem Shaikh, and Kotaro Yoshida. The listed individual Defendants are all University employees. Defendants now file this Amended Motion and supporting Memorandum of Law in response to the Court's comments at the status hearing on April 27, 2026, when the Court stated that a defendant moving to dismiss any claim in a complaint must respond in some fashion to every claim in the complaint.

opinion and fact, and Plaintiff's disagreement with the University's opinion about his abilities cannot convert a lawful exercise of academic judgment into a false statement of fact. Defamation law does not accommodate Plaintiff's attempt to recharacterize academic judgment as factual falsity simply because he disagrees with the consequences of the academic judgment.

Count III fails as well. Plaintiff alleges that he requested medical leave and was permitted to take it. The FMLA prohibits interference with the exercise of leave rights; it does not convert dissatisfaction with conditions attendant to leave status into an FMLA claim. Plaintiff does not allege that his leave was denied, shortened, discouraged, or used against him. His allegations instead concern routine administrative consequences of leave, which do not constitute interference, as a matter of law. Because the Complaint identifies no breach of the duty of fair representation, no unprivileged publication, and no interference with FMLA rights, it fails to state a claim as a whole.

## FACTUAL BACKGROUND[2]

### A. Plaintiff's Employment at the University

Plaintiff began working at the University of Chicago in September 2019 as an Assistant Instructional Professor in the Department of Economics. [Dkt. 7, at ¶ 1.] His appointment was governed by a collective bargaining agreement ("CBA") between the University and Local 73 of the Service Employees International Union ("Union"), which sets the framework for faculty evaluation and provides grievance mechanisms. [*Id.* at ¶¶ 3, 19-20, 22, 24.]

---

[2] For purposes of this Motion to Dismiss, Defendants accept Plaintiff's factual allegations as true but do not concede their accuracy and reserve the right to challenge those allegations later. The factual background below is from the Complaint and is intentionally limited to allegations relevant to Defendants' arguments for dismissal; it is not intended as a comprehensive recitation of all allegations in the Complaint.

### B.    Plaintiff's Performance Review

During the Autumn Quarter of 2024, Plaintiff taught undergraduate economics courses, coinciding with his scheduled performance review. [*Id.* at ¶ 26.] On September 29, 2024, Defendant Kotaro Yoshida, a faculty member in the Economics Department and one of Plaintiff's supervisors, contacted Plaintiff to arrange a classroom observation as part of the CBA's review process. [*Id.* at ¶¶ 10, 26.] Plaintiff proposed an *Introduction to Econometrics* class, and the classroom observation took place on October 22, 2024. [*Id.* at ¶¶ 26-27.]

In advance of the observation, Plaintiff and Yoshida confirmed the faculty members who would attend. [*Id.* at ¶¶ 28-29.] The observers included Victor Lima and Min Sok Lee, who served as Co-Directors of Undergraduate Studies and Master's Programs, respectively; Derek Neal, a senior faculty member in the Department; Eric Richert, a faculty member whose field included applied econometrics; and Yoshida. [*Id.* at ¶¶ 7-10, 13-15, 28.] Plaintiff provided the observing faculty members with copies of his lecture slides prior to the class session. [*Id*. at ¶ 31.]

### C.    Observation Report, Feedback, and Plaintiff's Objections

Following the October 22, 2024, classroom observation, the observing faculty prepared a written report assessing Plaintiff's instructional performance, including student engagement, pacing, instructional structure, and classroom dynamics. [*Id.* at ¶¶ 32-36.]

On October 30, 2024, Defendant Yoshida transmitted the completed report to Plaintiff and advised that it would frame the ensuing debrief discussion. [*Id.* at ¶ 32.] A debrief meeting was held on October 31, 2024, attended by Plaintiff and faculty members involved in the review process, including Yoshida, Victor Lima, and Min Sok Lee. [*Id.* at ¶ 33.] During the meeting, the evaluators discussed Plaintiff's performance as reflected in the observation report. [*Id.*]

After the debrief, Plaintiff sought additional feedback. On November 18, 2024, Plaintiff contacted Derek Neal, a senior faculty member who had participated in the classroom observation. [*Id.* at ¶ 34.] Neal advised that Plaintiff's teaching did not align with the Department's instructional expectations and that he did not support Plaintiff's progression, citing issues related to instructional materials, pacing, and student engagement. [*Id.* at ¶¶ 34-35.]

Plaintiff subsequently met with Azeem Shaikh, Chair of the Department, on November 21, 2024. [*Id.* at ¶ 36.] Shaikh advised that progression determinations were based on collective faculty review of evaluation materials generated through the established review process, and he addressed Plaintiff's questions regarding the review framework and faculty involvement. [*Id.*] Plaintiff thereafter continued to express disagreement with the evaluation and pursued relief through the grievance procedures set forth in the CBA. [*Id.* at ¶¶ 36-39.]

**D. Faculty Review and Progression Decision**

After completion of the classroom observation, the debrief meeting, and the preparation of evaluation materials, the Department proceeded with faculty consideration of Plaintiff's progression case. [*Id.* at ¶¶ 40-41.] The evaluation materials, including the classroom observation report and committee memoranda, were compiled and circulated to Department faculty in advance of a scheduled meeting. [*Id.* at ¶ 40.] Following faculty consideration, the Department Chair issued a memorandum dated January 21, 2025, recommending that Plaintiff not be promoted to Associate Instructional Professor. [*Id.* at ¶ 41.] On April 4, 2025, Plaintiff was informed that he had not met the standard for progression and would receive a terminal-year appointment, per the terms of the CBA. [*Id.* at ¶ 47.] Plaintiff thereafter challenged the progression decision through grievance and arbitration procedures under the CBA. [*Id.* at ¶¶ 49-53, 56.]

4

### E. Plaintiff's Medical Leave

In September 2025, Plaintiff met with Ingrid Gould, Senior Associate Provost and the University's leave administrator for academic appointees, to discuss medical leave. [*Id.* at ¶ 64.] After their meeting, Gould emailed Plaintiff summarizing the meeting and outlining applicable leave policies and conditions, including limitations on access to office space, campus resources, and participation in certain academic activities. [*Id.*] Plaintiff's medical leave was approved and commenced, though Plaintiff alleges that he did not receive a formal written FMLA designation notice. [*Id.* at ¶ 66.] During Plaintiff's leave, his access to certain workplace resources and activities — including office and library resources, eligibility for professional development and research funds, and participation in departmental and academic activities — was adjusted consistent with leave status. [*Id.* at ¶ 65.]

### <u>APPLICABLE STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). A claim is "plausible" where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must allege a right to relief beyond a "'speculative level;' if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citation omitted). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not satisfy this standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must take all well-pled facts as true, it should not "strain to find inferences favorable to plaintiffs." *Beam v. IPCO Corp.*, 838 F.2d 242, 246 (7th Cir. 1988).

**ARGUMENT**

**I.  Count I Fails Because Plaintiff Does Not Plausibly Allege a Breach of the Duty of Fair Representation**

A hybrid § 301 claim requires a plausible allegation that the union breached its duty of fair representation; absent that predicate, the claim against the employer fails as a matter of law. *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997). The Supreme Court has long rejected the premise underlying Plaintiff's claim: an employee has no right to dictate grievance strategy or compel arbitration. *Vaca v. Sipes*, 386 U.S. 171, 191-195 (1967). A union enjoys wide discretion in evaluating grievances and deciding how far to pursue them, even if the employee vehemently disagrees. *Rupcich v. UFCW Int'l Union*, Local 881, 833 F.3d 847, 853 (7th Cir. 2016); *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013). Only conduct that is arbitrary, discriminatory, or in bad faith falls outside that protected discretion.

In this case, Plaintiff has pleaded himself out of court. He alleges that the Union filed two grievances related to his progression review, submitted them to the University, and attended meetings in connection with both. (Dkt. 7, at ¶¶ 37, 38, 49, 52, 55.) He further alleges that the grievances proceeded to arbitration, at which point the parties elected mediation. (*Id.* at ¶¶ 54, 56.) Those allegations describe reasoned judgment — not perfunctory handling, discrimination, hostility, or bad faith.

Faced with those admissions, Plaintiff resorts to labels. Merely characterizing the Union's conduct as "arbitrary" or "bad faith" does not state a claim. (*Id.* at ¶ 75.) The Seventh Circuit has repeatedly held that in a § 301 claim, "reciting the magic words" is insufficient; a plaintiff must allege conduct so irrational as to fall outside the wide range of permissible union discretion — not merely negligent, mistaken, or unfavorable decisions. *Yeftich*, 722 F.3d at 916-17; *Bishop v. Air Line Pilots Ass'n*, 900 F.3d 388, 397 (7th Cir. 2018). Plaintiff alleges no such conduct. Courts

routinely dismiss duty of fair representation claims where, as here, the complaint itself shows that the union investigated the grievance and exercised judgment about how to proceed. *English v. SEIU Local 73*, 458 F. Supp. 3d 948, 954-55 (N.D. Ill. 2020); *Clark v. Int'l Union, UAW*, 2024 U.S. Dist. LEXIS 46063, at *11-14 (C.D. Ill. Mar. 15, 2024). Count I therefore fails at the pleading stage and should be dismissed.[3]

## II.    Count II Fails Because the Complaint Challenges an Internal Academic Evaluation, Not Actionable Defamation

Count II seeks to recast an unfavorable academic performance evaluation as defamation. Stripped of rhetoric, the Complaint alleges that faculty evaluators criticized Plaintiff's teaching performance and professional judgment during a formal academic review and concluded that he did not meet the standard for progression. Plaintiff's disagreement with those evaluative judgments does not entitle him to sue for defamation.

Illinois courts consistently reject attempts to repackage dissatisfaction with internal evaluations, promotion decisions, or professional assessments as defamation — particularly where, as here, the challenged statements consist of subjective judgments rendered through an established review process. *See, e.g., Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 412-413 (1996).

To state a claim for defamation, a plaintiff must plausibly allege (1) a false statement of fact concerning the plaintiff, (2) an unprivileged publication of that statement to a third party, and (3) resulting damages. *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1020 (2001). Count II fails to satisfy these requirements for several independent reasons. Any single one of those defects is dispositive; together, they foreclose the claim as a matter of law.

---

[3] For purposes of this Amended Motion to Dismiss only, the University does not challenge Plaintiff's allegation that it breached the Collective Bargaining Agreement (CBA). The University reserves the right to prove later that it did not breach the CBA.

A. **Plaintiff's Defamation Claim Fails Because He Identifies No False Statement of Fact**

Plaintiff's defamation claim fails at the outset because the Complaint does not identify any false statement of fact, an element essential to any defamation claim. Illinois law squarely requires defamation plaintiffs to allege the substance of the challenged statement of fact with sufficient specificity to permit judicial review and allow defendants to identify available defenses. *Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶ 18.

Plaintiff does not meet that standard. Rather than identifying any discrete false statement of fact, the Complaint broadly challenges internal academic evaluation and progression materials reflecting faculty assessments of Plaintiff's teaching and professional judgment. [Dkt. 7, at ¶¶ 33-36, 40-43.] Plaintiff does not allege that any challenged statement misstated an objective fact — such as fabricated events, false attribution of conduct, or incorrect historical details. Instead, he merely labels the evaluators' professional judgments as "false." [*Id.* at ¶¶ 79-80.] That rhetorical label conveys Plaintiff's disagreement with the evaluators' assessment of his abilities, but it does not plead a false statement of fact. Disagreement with professional judgment does not transform evaluative conclusions into false statements. *Pompa*, 2013 IL App (2d) 120911 at ¶¶ 18-20.

Because truth is an absolute defense to defamation, the burden rests on the plaintiff to allege what facts defendants asserted and why they were false. *Love v. Simmons*, No. 23-cv-2392, 2024 U.S. Dist. LEXIS 33272, at *10 (N.D. Ill. Feb. 27, 2024). Plaintiff does not do so here, and the Court is not required to guess which statements are challenged or to supply missing elements of his claim. *Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*, 887 F.3d 803, 825 (7th Cir. 2018).

B. **The Alleged Statements Are Not Defamatory *Per Se***

Even if Plaintiff had identified specific statements, his claim would still fail because the statements he challenges are not defamatory *per se*. A statement qualifies as defamatory *per se*

only if its defamatory character is apparent on its face. *Anderson*, 172 Ill. 2d 399 at 416. Although Illinois recognizes narrow categories of statements that may implicate professional reputation, liability exists only where the statement imputes disqualifying professional misconduct or incapacity when read in context. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 517 (1998).

The challenged statements evaluated teaching effectiveness, classroom engagement, pedagogy, and professional judgment and concluded that Plaintiff did not meet departmental standards for progression. [Dkt. 7, at ¶¶ 33-36, 40-43.] Assessments of that nature reflect institutional evaluation, not professional incapacity.

Illinois courts routinely reject defamation *per se* claims premised on internal performance evaluations for precisely this reason. In *Antonacci v. Seyfarth Shaw, LLP,* the court dismissed a defamation *per se* claim based on internal criticism of job performance and work habits, holding that the criticisms assessed performance and fit, but did not state that the plaintiff was unqualified for his profession. 2015 IL App (1st) 142372, ¶¶ 25-30. The allegations here are even less actionable. Plaintiff challenges unfavorable academic evaluations rendered through a structured review process. Such statements reflect professional judgment about performance and advancement, not disqualifying misconduct, and therefore cannot support defamation *per se*.

> **C.** **The Alleged Statements Are Non-Actionable Opinion and, in Any Event, Subject to Innocent Construction**

Count II also fails because the challenged statements are non-actionable professional judgments, not objectively verifiable facts. Illinois law draws a firm distinction between statements of fact, which may be actionable, and statements of opinion, which are not. An expression of opinion, even an unfavorable or harsh one, is not defamatory unless it misstates or implies objectively false facts. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 581 (2006). Whether a statement is factual or opinion is a question of law for the Court. *Freydin v.*

*Oakhurst*, 24 F.4th 1127, 1129 (7th Cir. 2022). Courts assess this distinction by considering whether the statement has a precise meaning, is capable of objective verification, and appears in a context signaling factual assertion or evaluative judgment. *Solaia Tech., LLC*, 221 Ill. 2d at 581. Each of those considerations forecloses Plaintiff's claim.

Plaintiff challenges criticisms of his limited student engagement, ineffective pacing, dense instructional materials, classroom dynamics, and professional judgment. [Dkt. 7, at ¶¶ 33-36, 40-43.] Terms of that nature are paradigmatic professional judgments: they lack fixed meaning, vary by evaluator and context, and are not capable of objective verification. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).

Context independently confirms the same conclusion. Plaintiff alleges that the challenged statements appeared exclusively in internal classroom observation reports, evaluator committee memoranda, and progression materials generated through the University's academic review process. [Dkt. 7, at ¶¶ 40-43.] That institutional setting unmistakably signals evaluative assessments and associated commentary, not assertions of objective fact. A reasonable reader would understand the statements as academic opinions, not as claims of provable misconduct. The same analysis applies to criticism of Plaintiff's handling of a suspected academic misconduct matter, which likewise reflects judgment and discretion. [*Id.* at ¶ 42.]

And even if any challenged statement could be read as factual, Illinois's innocent-construction rule independently forecloses liability. Where a statement is reasonably capable of a non-defamatory meaning, courts must adopt that interpretation as a matter of law. *Tuite v. Corbitt*, 224 Ill. 2d 490, 504 (2006).

Here, the most natural and reasonable reading of the challenged statements is that faculty reached a professional conclusion, after review, that Plaintiff did not meet departmental

expectations for advancement. Illinois law does not permit courts to infer defamatory meaning merely because an evaluation was unfavorable or carried professional consequences. *Anderson*, 172 Ill. 2d at 413-414; *Antonacci*, 2015 IL App (1st) 142372 at ¶ 30. Accordingly, because the challenged statements constitute non-actionable opinions and, in any event, are subject to innocent construction, Count II fails as a matter of law.

> **D. The Alleged Statements Are Protected by Qualified Privilege for Employment-Related Communications**

Plaintiff does not allege that Defendants published any defamatory statement to third parties outside the University. The question therefore is whether the internal sharing of opinions about Plaintiff's teaching abilities is protected by qualified privilege. Illinois law recognizes a qualified privilege for employment-related communications where the speaker and recipient share a common interest or duty. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 30 (1993). Internal communications concerning employee performance, evaluation, discipline, or advancement fall squarely within this privilege. *Antonacci*, 2015 IL App (1st) 142372 at ¶¶ 28-30.

That privilege applies here. Plaintiff challenges statements appearing exclusively in classroom observation reports, committee memoranda, and progression materials circulated among faculty and administrators responsible for evaluating his performance. [Dkt. 7, at ¶¶ 40-43.] Nothing in the Complaint suggests dissemination beyond that internal evaluative process.

Once qualified privilege applies, liability attaches only upon a plausible allegation of actual malice. *Kuwik*, 156 Ill. 2d at 26. That exacting standard requires factual allegations of knowing falsity or reckless disregard for the truth. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Conclusory allegations of hostility or unfairness are insufficient. *Am. Pet Motels, Inc. v. Chi. Veterinary Med. Ass'n*, 106 Ill. App. 3d 626, 632 (1982).

Plaintiff does not plausibly allege actual malice. To the contrary, the Complaint describes a structured academic review process involving multiple observers, written evaluations, committee deliberation, and layered administrative review — allegations that undermine, rather than support, any inference of knowing falsity or reckless disregard. [Dkt. 7, at ¶¶ 33-36, 40-41.]

Illinois courts routinely dismiss defamation claims where, as here, a plaintiff challenges internal performance evaluations without factual allegations of knowing falsity or reckless investigation. *See Huon v. Beatty*, 407 Ill. App. 3d 1185, 1196-1201 (2011) [4] (rejecting defamation claim based on internal evaluations and holding that disagreement with evaluative judgment does not establish bad faith or malice). That is precisely the case here. Plaintiff alleges no facts plausibly suggesting that any Defendant knowingly made false statements or seriously doubted their truth; his claim rests solely on disagreement with academic judgment. That is insufficient, as a matter of law, to overcome qualified privilege, and Count II should be dismissed.

**III.**     <u>Count III Fails Because Plaintiff Does Not Plausibly Allege FMLA Interference</u>

Count III asserts a claim for FMLA interference, but the Complaint does not plausibly allege that Defendants interfered with the exercise of any protected leave right. Although the FMLA does not require an outright denial of leave to state an interference claim, it reaches only conduct that restrains, discourages, or otherwise impairs an employee's ability to take or benefit from protected leave. Plaintiff alleges no such conduct. Instead, Count III attempts to equate Plaintiff's dissatisfaction with leave administration and institutional rules with actionable interference. Even if true, those allegations concern conditions attendant to leave status, not conduct that obstructed or discouraged Plaintiff's exercise of FMLA rights.

---

[4] *Huon v. Beatty*, 2011 WL 9717454, at *7 (Ill. App. Ct. 2011) is an unpublished Rule 23 order and is cited solely for its persuasive value. *See* Ill. S. Ct. R. 23(e)(1).

### A. Plaintiff Alleges Approved and Taken Leave, Not Interference

Plaintiff's own allegations defeat his interference claim. The Complaint describes an employee who was permitted to take the leave he requested. [Dkt. 7, at ¶¶ 64-66.] Plaintiff does not allege that Defendants denied, delayed, discouraged, or otherwise impeded his approved leave. To the contrary, his allegations reflect that leave was approved and taken as contemplated.

That distinction is dispositive. While the FMLA does not require outright denial of leave, interference requires allegations that an employer restrained, discouraged, or otherwise undermined the employee's ability to use protected leave. *Ziccarelli v. Dart*, 35 F.4th 1079, 1087-89 (7th Cir. 2022). Plaintiff does not allege that he hesitated, altered, shortened, or declined his leave, or that leave was used as a negative factor in any employment decision. Instead, the Complaint reflects that disputes arose only after leave had begun, concerning the consequences and limitations naturally attendant to leave status. [*Id*. at ¶¶ 64-66.] Allegations concerning post-approval logistics or the incidental consequences of being on approved leave, none of which Plaintiff alleges were used as a negative factor in any employment decision, do not plausibly describe interference with the exercise of FMLA rights.

Plaintiff attempts to salvage his claim by pointing to two categories of alleged conduct, neither of which constitutes interference. First, he alleges deficiencies in FMLA paperwork and the absence of a formal designation notice. [*Id.* at ¶ 66.] But notice deficiencies constitute interference only where they plausibly affect how leave is exercised — by causing confusion about eligibility, available leave, or job protection such that the employee alters or foregoes leave. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002); *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 368 (7th Cir. 2020). Plaintiff does not allege that any purported paperwork issue

caused him to misunderstand his rights, delay leave, shorten leave, or decline leave altogether. Absent such prejudice, paperwork complaints do not amount to actionable interference.

Second, Plaintiff challenges restrictions that applied during leave, including office access limitations, removal from a year-long academic working group, limits on participation in departmental activities, and instructions not to conduct teaching-assistant interviews until after returning from leave. [Dkt. 7, at ¶¶ 65, 68-69.] These allegations describe conditions inherent in leave status, not conduct restraining or discouraging leave use. FMLA guarantees leave and reinstatement; it does not convert neutral limitations inherent in leave status into actionable interference. *Simpson v. Office of the Chief Judge*, 559 F.3d 706, 712-13 (7th Cir. 2009). Plaintiff also alleges that Defendants "described duties" during leave that differed from his contract, but he does not identify what duties changed, how they differed, or whether any change took effect after his return. [Dkt. 7, at ¶ 69.] Such conclusory allegations do not plausibly allege interference.

Because Plaintiff's own allegations show that he was permitted to take leave without obstruction and complains only of administrative conditions attendant to leave status, Count III fails to state a claim for FMLA interference.

**B.      The Court Should Also Dismiss Count III as to Individual Defendants Who Did Not Exercise Control Over Plaintiff's FMLA Rights**

Plaintiff asserts his FMLA interference claim not only against the University, but also against several individual Defendants. [Dkt. 7, at ¶ 83.] Individual liability under the FMLA attaches only where the individual defendant exercised control over the employee's use of protected leave, such as authority to grant, deny, or otherwise restrain FMLA rights. 29 U.S.C. § 2611(4)(A)(ii)(I). Courts therefore evaluate FMLA interference claims on a defendant-by-defendant basis, dismissing claims where the alleged conduct does not satisfy the statutory

14

elements even if the claim proceeds against others. *See Reitman v. Evanston/Skokie Cmty. Consol. Sch. Dist. 65*, 764 F. Supp. 3d 717, 726-27 (N.D. Ill. 2025).

Plaintiff alleges that Defendant Gould served in a leave-administration role and communicated with Plaintiff regarding leave documentation and conditions. [Dkt. 7, at ¶¶ 64-66.] Even assuming those allegations indicate Gould had some control over Plaintiff's FMLA leave, they do not cure the fundamental defect identified above: Plaintiff does not plausibly allege interference with the exercise of FMLA rights in the first instance.

In any event, the FMLA claim plainly fails as to Defendants Leibsker, Lima, and Manick. The Complaint alleges only that these Defendants engaged in departmental or administrative activities during Plaintiff's leave, including committee participation, interview activities, expense approvals, and communications regarding leave-status limitations. [*Id.* at ¶¶ 65, 67-69.] Plaintiff does not allege that any of these Defendants approved or denied leave, altered its duration, discouraged its use, or otherwise exercised control over Plaintiff's FMLA rights. Routine supervisory or administrative involvement of that nature is insufficient to establish individual liability under the FMLA. Because the Complaint does not plausibly allege that Leibsker, Lima, or Manick exercised control over Plaintiff's leave or participated in any actionable interference, the claims against them fail. *See Reitman*, 764 F. Supp. 3d at 726-27 (dismissing FMLA claims against individual defendants where the complaint failed to allege that they had authority over the plaintiff's leave or were personally involved in the alleged interference). Therefore, at a minimum, the Court should dismiss Count III as to these Defendants.

## CONCLUSION

Plaintiff's Complaint reflects his disagreement with academic judgment, union discretion, and routine administrative decisions, not actionable wrongdoing. Illinois defamation law does not

15

permit claims based on subjective academic evaluations. The FMLA does not allow claims based on an employee's dissatisfaction with the consequences of approved leave, and settled labor law forecloses hybrid § 301 claims absent well-pled allegations that a union breached the duty of fair representation. Because the defects in Counts I, II, and III are legal, not factual, and cannot be cured by repleading, dismissal is appropriate and, accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

Dated: May 11, 2026                          Respectfully submitted,

                                        By:   */s/ Jacob M. Rubinstein*
                                              Jacob M. Rubinstein
                                              Cozen O'Connor
                                              123 N. Wacker Drive, Suite 1800
                                              Chicago, IL 60606
                                              312-382-3100
                                              jrubinstein@cozen.com
                                              *Attorney for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, on May 11, 2026, a true and correct copy of the attached Defendants'
Amended Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint was
electronically filed with the Clerk of the United States District Court for the Northern District of
Illinois via the CM/ECF system, which will cause service to be made in accordance with the
Court's electronic filing procedures.

By:    <u>*/s/ Jacob M. Rubinstein*</u>
         Jacob M. Rubinstein
