**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SRINIVASAN VASUDEVAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:26-cv-211 |
| ) | |
| v. ) | Hon. Judge Matthew F. Kennelly |
| ) | |
| UNIVERSITY OF CHICAGO, et al., ) | Hon. Magistrate Judge M. David Weisman |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 73**

In its Memorandum of Law (ECF No. 45), in support of its motion to dismiss Plaintiff

Vasudevan's Complaint (ECF No. 7) against Local 73, the Union established that Vasudevan

failed to allege a plausible claim that the Union breached its duty of fair representation.[1] In his

response (ECF No. 49), Vasudevan "narrates his grievances at great length"—going far beyond

the allegations in the Complaint—but he still does not allege a plausible claim "consistent with

'judicial experience and common sense,'" *Egwuenu v. Charles Schwab & Co.*, 834 F. App'x

245, 246 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), of arbitrary,

discriminatory, or bad faith conduct by the Union, *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916

(7th Cir. 2013).

To be sure, Vasudevan is dissatisfied with the Union's representation, and he argues that the

Union should have made different choices, prepared more, and generally, in his telling, lived up

to a higher standard of competence. Precedent is clear, however, that an employee's

---

[1] Capitalized terms not otherwise defined here have the meaning given in Local 73's
memorandum of law in support of its motion to dismiss (ECF No. 45).

disagreement with how a union presents their case and allegations of negligence do not state a claim for breach of the duty of fair representation. *See Taha v. Int'l B'hood of Teamsters, Local 781*, 947 F.3d 464, 471 (7th Cir. 2020) ("'It is not [a court's] job to substitute [its] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call.'" (quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1177 (7th Cir. 1995)); *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) ("'[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation.'") (*quoting USW v. Rawson,* 495 U.S. 362, 372-73 (1990)).

I.      **Vasudevan Does Not Allege Arbitrary or Irrational Conduct by the Union.**

Even considering the new facts alleged in his brief, Vasudevan still alleges nothing to create a plausible inference of irrational or arbitrary conduct by the Union. *See Yeftich*, 722 F.3d at 917. "What is required to be shown," in a duty of fair representation claim against a union, "goes considerably beyond the requirements of a malpractice suit." *Garcia*, 58 F.3d at 1176. "The union must provide 'some minimal investigation of employee grievances,' but the thoroughness of this investigation depends on the particular case, and 'only an egregious disregard for union members' rights constitutes a breach of the union's duty.'" *Id.* (quoting *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985)).

Vasudevan's story falls far short of alleging such an egregious disregard for his rights. He acknowledges that no less than five Union representatives assisted on his case, including the Union's General Counsel Carpenter, over a span of nine months from November 2024 through August 2025. ECF No. 7, ¶¶ 37, 54-59. The Union filed two grievances on his behalf. *Id.*, ¶¶ 37, 49. He complains that those grievances had clerical errors, but he admits that he has no basis to suggest those errors prejudiced his case, other than conclusory speculation. *See* ECF No. 49, at 4 ("Those errors also plausibly prejudiced Plaintiff's grievance position because they revealed lack

2

of diligence to the University and could have affected the University's arbitration and settlement posture.").

The Union then advanced his claims through the grievance process to arbitration. ECF No. 7, ¶¶ 38-39, 49-59. He complains that, while the University provided a third-step answer to his First Grievance, the Union did not obtain a third-step answer for his Second Grievance before advancing it to arbitration. *See* ECF No. 49, at 4-5. Again, however, Vasudevan can only speculate that not having the University's "formal position" somehow prejudiced his case. That, too, is not sufficient to allege a plausible claim of an egregious disregard of his rights. *See Jones v. Property Mgmt. One, Ltd.*, No. 00 C 313, 2000 U.S. Dist. LEXIS 14990, at *12 (N.D. Ill. Oct. 10, 2000) (holding allegations of union "failing to follow the procedures set forth" in contract and "failing to require defendant [employer] to follow the terms and procedures" of the contract "does not state how these alleged failures of the Union's were arbitrary, discriminatory, or taken in bad faith"); *Walker v. Henderson*, No. 98 C 3824, 1999 U.S. Dist. LEXIS 740, at *20-21 (N.D. Ill. Jan. 15, 1999) (holding that employee's complaint that Union did not "request a written reason for USPS's rejection as provided for in Article 13 of the Agreement" was only a "conclusory statement[] that the [union] NALC could have done a better job").

Vasudevan also acknowledges that the Union's attorney Nguyen began preparing for the arbitration hearing with him three days in advance. ECF No 49, at 4. He argues, however, that is not sufficient preparation time, and that he believed Nguyen did not understand his claims. *Id.* Even if true, that would again suggest no more than negligence. *See Garcia,* 58 F.3d at 1175, 77 (evidence that union attorney met with grievant for first time on morning of arbitration and failed to review evidence or interview witnesses requested by grievant did not establish triable issue of breach of duty of fair representation); *Castelli*, 752 F.2d at 1482 (evidence that union

3

representative "spent only one and one-half hours preparing for the arbitration, failed to contact key witnesses, failed to introduce as evidence gold jewelry found on Castelli in proof that he was selling it, and inadequately cross-examined the Douglas Aircraft security officer who investigated" insufficient to establish breach of duty of fair representation).

Vasudevan also complains that in the course of the mediation before the arbitrator, Nguyen prevented him from answering the arbitrator's questions and otherwise made errors and did a lackluster job presenting plaintiff's case. ECF No. 49, at 6-7. It is well established, however, that a union controls the presentation of a grievance, not the employee, and that authority includes decisions regarding what evidence, witnesses, and testimony to present. *See, e.g., Taha*, 947 F.3d at 468-69 (allegations that union representative "told [grievant] to remain silent" and "prevented [grievant] from presenting several strong and important exhibits" not sufficient to state plausible claim); *Garcia*, 58 F.3d at 1179 (union not required to follow grievant's "preferred approach," even where union's judgment was not as "thorough as [it] might have been"); *Reed v. Ardagh Glass, Inc.*, No. 1:15cv188, 2016 U.S. Dist. LEXIS 181123, at *32-33 (N.D. Ind. Dec. 29, 2016) ("Yet, the decisions as to what witnesses to call, what questions to ask witnesses and what documents to introduce at an arbitration hearing are judgment calls for the Union to make.").

A union's presentation of a case is also not expected to be "error free." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976); *Castelli*, 752 F.2d at 1483 ("But if errors, they were at most errors of judgment, and not evidence of breach of the duty of fair representation."). Vasudevan again alleges no facts creating a plausible inference that his case would have turned out differently had Nguyen followed his instructions and presented the case how he wanted. *See Taha*, 947 F.3d at 471 (employee failed to allege plausible claim where he failed to explain what evidence the union failed to present and how it would have changed the outcome of his case).

4

Vasudevan also complains that the Union "did not disclose that Staff Attorney Wesley Payne was not licensed to practice law." ECF No. 49, at 6. Again, he does not present facts to suggest that this had any impact on his case. He admits attorney Nguyen worked on his case, and he was advised by the Union's General Counsel Carpenter, even if Vasudevan did not like the advice. ECF No. 7, ¶¶ 3, 54. In any event, an employee has no right to an attorney in a union grievance and arbitration, under either federal or Illinois law. *See Castelli*, 752 F.2d at 1483 ("Where a union representative assists an employee at arbitration, the union's failure to provide the employee with an attorney is not a breach of the duty of fair representation."); *Reed*, 2016 U.S. Dist. LEXIS 181123, at *33; *Zander v. Carlson*, 2020 IL 125691, ¶ 26 (explaining that "[l]abor grievances and arbitrations frequently are handled by union employees or representatives who have not received any professional legal training at all.'"") (quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1257 (9th Cir. 1985)).

Vasudevan's complaint that the Union did not allow his personal attorney to address the arbitrator is also beside the point. He simply had no right to have his personal attorney participate in the grievance mediation or arbitration. *See Garcia*, 58 F.3d at 1179 ("Unions are given considerable discretion in handling grievance procedures. This discretion includes the right to limit the role of outside attorneys in the grievance process."); *Castelli*, 752 F.2d at 1483.

As discussed in the Union's opening brief, it is also indisputable that the Union had authority to settle the grievance over Vasudevan's objection. *See Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) ("Unions are free to negotiate and accept settlements even without the grievants' approval."); ECF No. 45, at 11-12. Vasudevan argues, nonetheless, that the Union improperly conducted settlement negotiations and attempted to coerce his consent to the settlement. ECF No. 49, at 5, 7. Those arguments, too, are meritless.

5

Vasudevan acknowledges that the Union's General Counsel Carpenter recommended settlement because the Union believed he was unlikely to prevail at arbitration. ECF No. 7, ¶ 54. Even if Carpenter's advice were wrong, Vasudevan alleges nothing to create a plausible inference that Carpenter's advice was pretextual. That is fatal to plaintiff's claim. *See Vaca*, 386 U.S. at 195 ("a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious"). Vasudevan posits that, "If the Union believed the grievances were weak, its conduct raises an obvious question: why did it take them to the edge of arbitration without preparing, developing witnesses, reviewing the CBA, or pursuing settlement earlier?" ECF No. 49, at 5. Whatever Vasudevan intends to imply by that question, there is nothing arbitrary or bad faith about a union pursuing a grievance to the eve of arbitration, even if it did believe the case was weak. Any litigator facing a weak case would recognize the rational strategy behind pushing a case forward and attempting to win what it could for an employee through settlement, even if the chances at trial were always bleak.

Vasudevan also complains that the Union should have started settlement discussions sooner, ECF No. 49, at 5, and suggests that the Union wrongly disclosed "confidential caucus positions," *id.*, at 4. Again, however, this reflects only Vasudevan's disagreement with how the Union chose to conduct settlement negotiations, and he alleges no facts to plausibly suggest that the Union could have obtained some better settlement had it taken a different approach. Vasudevan never alleges anything deficient about the substance of the settlement at all. He cites no authority for his belief that the Union had some duty to maintain confidentiality in the course of settlement discussions, which would be inconsistent with the Union's authority to control the settlement process. Vasudevan's complaints that the Union did not sign the term sheet or proofread the settlement agreement raise, at most, a question of negligence, which does not state a plausible

claim of egregious disregard of his rights. *See Garcia*, 58 F.3d at 1176.

Vasudevan also was not coerced into any settlement. He refused the settlement. If the Union has authority to settle a grievance over the employee's objection, it cannot be unlawful coercion for the Union to warn the employee that the Union would decline to pursue the grievance further—as the Union did, ECF No. 7, ¶¶ 60-61—if he refused the settlement. Also contrary to Vasudevan's suggestion, there is nothing nefarious or coercive about the proposed settlement including a release of claims. *See* ECF No. 49, at 7. To be effective, Vasudevan would have had to personally agree to that release of claims. Such a release is also common, and a Union does not abuse its discretion by determining that a settlement requiring a release of claims between the employee and the employer is reasonable. *See Stiles v. Chem. & Prod. Workers' Union, Local No. 30,* 658 F. Supp. 2d 310, 315-16, 322 (D.N.H. 2009) (union did not breach duty of fair representation where it agreed to settlement requiring a release of claims over employee objection). Had Vasudevan agreed, he would have received the benefits of the settlement as consideration for the release of claims. Having rejected the settlement, he is free to pursue whatever non-contractual claims against the University that he might have.

In sum, Vasudevan's allegations do not create a plausible inference that the Union failed to conduct a "minimal investigation," *Garcia*, 58 F.3d at 1176, of his case or that the Union processed his grievance in a "perfunctory fashion," *Vaca*, 386 U.S. at 191. He has, therefore, failed to allege a plausible claim of arbitrary conduct.

## II.    Vasudevan Fails to Allege Bad Faith or Discriminatory Conduct by the Union.

Vasudevan also fails to allege facts to create a plausible inference that the Union acted with a bad faith, "improper intent, purpose, or motive." *Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 694 (7th Cir. 2021). He never even suggests what the Union's bad faith motive might be. At most he speculates that some unnamed bad faith motive could be inferred from the Union's

7

alleged, "concealment of grievance documents, concealment of unlicensed status of staff attorney, unsupported accusations used as settlement pressure, disclosure of confidential caucus positions, refusal to clarify grievance status, continued refusal to communicate the status of Plaintiff's grievances after Plaintiff filed an NLRB charge, and post-hoc invocation of discretion after nonperformance." ECF No. 49, at 3-4. Those conclusory allegations do not create a plausible inference of bad faith.

The Union did not conceal the grievance documents. Vasudevan admits that Carpenter sent him the grievances. ECF No. 7, ¶ 55. Even if the Union failed to disclose that Payne was not an attorney, it would be irrelevant. As discussed above, Vasudevan had no right to an attorney at all. Moreover, his conclusory allegation regarding lack of communication is belied by the months of communications between the Union and him regarding his grievances alleged in his Complaint and brief. His claimed ignorance regarding the status of his grievance, ECF No. 49, at 4, is also belied by his allegation that Carpenter informed him that "'If you do not intend to abide by the terms mutually agreed to at mediation, the Union will withdraw the grievances.'" ECF No. 7, ¶ 60. *See also Yeftich*, 722 F.3d at 916 (allegation that "the union intentionally misled the plaintiffs as to the status of the grievances when in fact the union invidiously diverted, stalled, and otherwise terminated and abandoned the grievances" (cleaned up), insufficient to state a claim); *Bazarte v. Un. Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970) ("Nor is the union's failure to inform plaintiff of its decision not to go forward with his case enough to establish unfair representation, especially since there is no showing that this prejudiced him in any way, . . ."); *Spears v. Local No. 134, IBEW*, No. 04 C 7040, 2006 U.S. Dist. LEXIS 29713, at *16 (N.D. Ill. Apr. 25, 2006) ("Case law is clear, however, that 'the failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation.'" (quoting *Beckman v.*

*U.S.P.S.*, 79 F. Supp.2d 394, 404-05 (S.D.N.Y. 2000)). As also discussed above, there is nothing improper or coercive regarding how the Union handled the settlement process, including any alleged disclosure of confidential caucus positions.

Vasudevan further alleges that after the Union had informed him that it would not be proceeding with arbitration, "Carpenter accused Plaintiff of having 'denigrated Local 73' and of having 'belittled' Nguyen." ECF No. 7, ¶ 61. Yet, throughout his Complaint and brief, Vasudevan repeatedly accuses the Union, and Nguyen specifically, of deficient performance, demonstrating his disagreements with the Union throughout the grievance process. Carpenter's corresponding acknowledgment of Vasudevan's negative opinions about the Union and Nguyen does not create a plausible inference that the Union acted with an improper retaliatory motive. *See Stiles*, 658 F. Supp. 2d at 322 (allegation that union "expressed hostility to the plaintiff for engaging a private attorney to assist her" did not create inference of bad faith motive).

Vasudevan also alleges that the Union "compromised" his "trust in the representation process" because its handling of the grievances was shaped by "internal dysfunction" and "employer-facing" relationship concerns. ECF No. 49, at 6. To support this, Vasudevan says that at some point Nguyen "ask[ed] whether Plaintiff was autistic, volunteer[ed] personal diagnostic speculation, [and] stat[ed] that Carpenter was autistic." *Id.* That Nguyen speculated about her own diagnosis, believed Carpenter was "autistic," and queried whether Vasudevan might also be, does not suggest that the Union somehow represented him with some speculative bad faith motive. Nor does Nguyen's alleged statement that the University's attorney believed "Plaintiff was irritating and was damaging the Union's relationship with the University," create a plausible inference of bad faith motive. *Id.* It is proper for the Union to consider its "relationship with the employer" when deciding how to process a grievance. *See Neal*, 349 F.3d at 369.

9

Vasudevan also alleges that the Union "escalated hostility after Plaintiff raised concerns that Nguyen's email account had been hacked" and that "[a] union does not act in good faith when it treats a member's confidentiality concern as disloyalty." ECF No. 49, at 6. He does not, however, allege any facts to support such a conclusory (and confusing) suggestion. Without facts suggesting how or why the Union treated him as "disloyal" because of his complaints over an email hack, it is entirely implausible to infer the Union retaliated against him because of it.

Finally, Vasudevan does not allege that the Union harbored any discriminatory motive, let alone allege facts from which to infer such an unnamed motive plausibly existed. Nor does he allege that his grievance was handled differently from how the Union handles grievances generally. Thus, Vasudevan does not allege a plausible claim of discriminatory conduct either. *See Bishop,,* 5 F.4th at 694 (duty of fair representation claim based on discrimination requires subjective inquiry into union's motive).

## **CONCLUSION**

The Union respectfully requests that plaintiff's Count I, breach of duty of fair representation claim against the Union should be dismissed and that the Union be dismissed from the case.

Respectfully submitted,

Dated: June 5, 2026

/s/ George A. Luscombe III
George A. Luscombe III
DOWD, BLOCH, BENNETT, CERVONE
  AUERBACH & YOKICH LLP
8 South Michigan Avenue, 19th Floor
Chicago, Illinois 60603
(312) 372-1361 – Telephone
(312) 372-6599 – Facsimile
Email: gluscombe@laboradvocates.com

Alicia Weber
Senior Staff Attorney
SEIU LOCAL 73
300 S Ashland Ave. Suite 400

Chicago, IL 60607
(312) 402-4968 – Telephone
Email: aweber@seiu73.org

*Attorneys for Defendant*
  *Service Employees Int'l Union Local 73*