**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SRINIVASAN VASUDEVAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 26-cv-00211 |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| | ) | Hon. Magistrate Judge M. David Weisman |
| THE UNIVERSITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**UNIVERSITY DEFENDANTS' REPLY MEMORANDUM
<u>IN SUPPORT OF MOTION TO DISMISS</u>**

Plaintiff's Memorandum of Law in Opposition to the University Defendants' Motion to Dismiss repeats a single refrain: that he has "plausibly pleaded" his claims. However, Plaintiff's Opposition does not defend the Complaint (Dkt. 7) as it exists — it attempts to replace it. Plaintiff repeatedly asserts that he "alleges" facts sufficient to establish liability, yet these facts are not in the Complaint. Instead, the facts Plaintiff asserts as support for his claims appear in his Opposition to the Motion to Dismiss, not in his Complaint. Plaintiff's attempt to add new facts in his Opposition is not a defense of the Complaint; it is a tacit admission that the Complaint cannot stand on its own.

Rule 12 of the Federal Rules of Civil Procedure requires more. A plaintiff cannot state a claim by insisting, in circular fashion, that he has done so. He must allege concrete facts that, if true, plausibly satisfy each element of his claims. Conclusory labels — "bad faith," "false statements," "interference" — do not suffice, and the law does not permit plaintiffs to retrofit deficient complaints with factual content in a response to a motion to dismiss. The viability of a claim rises or falls on the allegations in the complaint itself, not on facts "pled" for the first time in a brief opposing a motion to dismiss.

1

Indeed, Plaintiff's Opposition highlights exactly why the Court should dismiss the Complaint. Plaintiff's duty of fair representation claim (Count I) includes allegations of active union representation, which he attempts to recast as misconduct. His defamation claim (Count II) invokes "false factual assertions" without pleading any statement that is both factual and false. And his Family and Medical Leave Act ("FMLA") claim (Count III) acknowledges that the University granted him FMLA leave, yet attempts to convert routine administrative conditions into interference and retaliation. In each instance, Plaintiff's Opposition attempts to substitute argument for allegations and labels for facts. Because Plaintiff has not pled facts that plausibly establish any of his claims, and because his Opposition to the University Defendants' Motion to Dismiss confirms, rather than cures, those deficiencies, the Court should dismiss the Complaint with prejudice.

## **REPLY ARGUMENT**

**I.      Count I Fails Because Plaintiff's Own Allegations Establish That The Union Fulfilled Its Duty of Fair Representation**

Plaintiff's Opposition does not save Count I; it confirms Count I's failure. Unable to identify facts showing the Union engaged in arbitrary, discriminatory, or bad-faith conduct, Plaintiff recasts his claim as one of "bad faith," "coercion," and "nonperformance." (Dkt. 49 at 6.) Those labels cannot overcome what the Complaint itself establishes: the Union actively represented Plaintiff and exercised discretion concerning how to handle his case within the bounds of the law. (Dkt. 7 at ¶¶ 37-39, 49, 54-56.)

At the threshold, Plaintiff improperly attempts to rewrite his Complaint. In his Opposition, he now asserts that the Union engaged in "concealment" of grievance documents, used "unsupported accusations" to pressure settlement, disclosed "confidential" information, and otherwise acted improperly during the arbitration process. (Dkt. 49 at 3-7.) Yet the Complaint

2

contains none of these facts. Plaintiff's attempt to add facts via his Opposition is improper and should be rejected. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (plaintiff may not amend complaint through arguments in a brief).

New assertions aside, the Complaint itself forecloses any plausible claim. Plaintiff alleges that the Union pursued his grievances through each stage of the contractual process, including arbitration, and exercised judgment in evaluating their merit and what would be an acceptable resolution. (Dkt. 7 at ¶¶ 37-39, 49-56.) These are not allegations of perfunctory handling, discrimination, or abandonment — they are allegations of engaged representation. Taken as true, they place the Union's conduct squarely within the "wide range of reasonableness" afforded to collective bargaining representatives. *See Rupcich v. UFCW Int'l Union, Local 881*, 833 F.3d 847, 853 (7th Cir. 2016) (internal citations omitted).

Recognizing that his Complaint alleges active and meaningful representation, Plaintiff shifts ground to challenge how the Union represented him. (Dkt. 49 at 5-7.) He points to the Union's assessment that his grievances were unlikely to succeed, its disagreement with his preferred strategy, and its decision not to pursue his grievance further after mediation. In his Opposition, Plaintiff relabels those same facts as "nonperformance," "unpreparedness," and bad faith. (*Id.*) But those are adjectives — not facts. Even accepted as true, they amount to nothing more than dissatisfaction with the Union's judgment. That is not enough. The duty of fair representation does not entitle an employee to dictate litigation strategy, compel arbitration, or require a union to pursue a grievance indefinitely. It protects against arbitrary, discriminatory, or bad faith conduct — not decisions with which the employee disagrees. *Vaca v. Sipes*, 386 U.S. 171, 191-195 (1967).

Plaintiff's reliance on conclusory labels does not bridge that gap. His Opposition repeatedly invokes "bad faith," "concealment," and "coercion," but neither his Opposition nor his Complaint allege facts plausibly supporting those characterizations — such as intentional deception, improper motive, or conduct so irrational as to fall outside permissible union discretion. (Dkt. 49 at 3-7, 10.) As the Seventh Circuit has made clear, "[b]are assertions of the state of mind required for the claim … must be supported with subsidiary facts." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013). Plaintiff provides none.

Nor does Plaintiff's attempt to isolate particular stages of the grievance process salvage his claim. (Dkt. 49 at 5.) To the extent he contends the Union acted in bad faith at a discrete step, the Complaint itself alleges that his grievances advanced beyond those stages to arbitration. (Dkt. 7 at ¶¶ 54-56.) That progression is incompatible with any claim of arbitrary refusal to process or abandonment. A grievance cannot be both pursued through arbitration and, at the same time, "ignored" or "perfunctorily handled."

Both the Complaint and the Opposition describe the same dispute: Plaintiff disagrees with how the Union handled his grievances. That is not enough for a claim that a union breached its duty of fair representation. Because Plaintiff fails to plausibly allege arbitrary, discriminatory, or bad faith conduct, Count I fails as a matter of law. And because facts showing a union breached its duty of fair representation claim are a necessary predicate to a hybrid § 301 claim, his claim against the University necessarily fails as well.

## II. Count II Still Fails: Plaintiff's Opposition Does Not Save His Defamation Claim

Plaintiff's Opposition confirms that Count II fails as a matter of law. Rather than defend the sufficiency of the Complaint, Plaintiff attempts to cure its deficiencies by attaching, for the first time, the Committee and Chair Memoranda and selectively quoting from them. (Dkt. 49 at 8.)

That move underscores rather than cures the pleading deficiency. If Plaintiff had properly pled actionable false statements, there would be no need to introduce them now in briefing.

Even with this improper supplementation, Plaintiff still does not identify an actionable false statement of fact. The Complaint alleges, in conclusory fashion, that Defendants made "false statements of fact" and acted with "actual malice," but points only to the existence of internal review materials. (Dkt. 7 at ¶¶ 40-43, 79-80.) His Opposition fares no better. Although he repeatedly asserts that the memoranda contain "verifiable false factual assertions," he does not identify any specific statement pleaded in the Complaint that is both factual and false. Nor does Plaintiff explain how any such statement could be proven true or false. (Dkt. 49 at 8-9; *see also Barakat v. Matz*, 271 Ill. App. 3d 662, 671 (1995) (Illinois courts consider the totality of the circumstances and whether the statement can be objectively verified as true or false.)) Rule 12 requires factual content supporting each element of a claim, not post hoc assurances in briefing that such facts exist when, in reality, they do not

Regardless, Plaintiff's own allegations and arguments confirm that the challenged statements are non-actionable evaluative judgments. He alleges that an evaluator criticized his teaching as reflecting a "heavy slide deck," "minimal engagement," and pacing that was "too plodding," such that "the smart kids were annoyed." (Dkt. 7 at ¶ 35.) Those are paradigmatic subjective assessments. Evaluations of engagement, pacing, and classroom effectiveness lack fixed meaning, are not objectively verifiable, and depend on professional judgment. Courts applying Illinois law routinely hold that such statements are protected opinion. *See, e.g., Kronenberg v. Baker & McKenzie LLP*, 692 F. Supp. 2d 994, 998 (N.D. Ill. 2010) (dismissing defamation claim because performance ratings such as "meets some expectations" or "does not meet expectations," along with comments that an employee "has difficulty working with others"

or "failed to work together as a team player," are not objectively verifiable facts but protected opinion).

The same is true of the statements Plaintiff challenges in the Committee Memorandum. He points to assertions that he failed to follow "protocol," conducted his own investigation, and thereby "compromised" an institutional process. (Dkt. 7 at ¶ 42.) But whether conduct "compromised" a process or complied with institutional expectations depends on the application of professional standards and judgment, not objectively verifiable facts. *See Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 701 N.E.2d 99, 104 (Ill. App. Ct. 1998).

Plaintiff's remaining arguments confirm that the defamation claim fails as a matter of law. He contends that statements in the memoranda are actionable because they rely on "false factual predicates" and because courts must read statements in context, not under an "innocent construction." (Dkt. 49 at 7-9.) But those principles do not help him. On the contrary, they defeat his claim.

*First*, Plaintiff's invocation of "false factual predicates" is entirely conclusory. (Dkt. 49 at 10.) He identifies no concrete, objectively verifiable factual assertions in the Complaint that could be proven false, such as a fabricated event or incorrect historical detail . (*Id.* at 9.) Instead, he disputes how Defendants interpreted events, particularly his handling of an academic-misconduct issue, and relabels that disagreement as falsity. But whether conduct "compromised" a process or complied with institutional protocol necessarily depends on the application of professional standards and judgment. That type of assessment is not a binary fact capable of verification; it is an opinion.

*Second*, Plaintiff's reliance on contextual analysis underscores why the statements are not actionable. He is correct that courts read statements in their full context and give them their natural

6

and obvious meaning. (*Id.* at 9.) But the relevant context here is that by Plaintiff's own allegations, the challenged statements appeared exclusively in internal performance-review materials — a classroom observation report, a committee memorandum, and a Chair's memorandum — prepared as part of a formal progression evaluation. (Dkt. 7 at ¶¶ 40-43.) In that setting, the "natural and obvious meaning" of statements about teaching performance, professional judgment, and institutional protocol is that they are evaluative assessments (opinions) and not assertions of objectively verifiable facts. Context does not transform those evaluations into defamation; it confirms they are non-actionable opinions.

Nor does Plaintiff adequately plead abuse of any qualified privilege. Although he asserts that he need only "plausibly allege abuse," the Complaint contains no well-pleaded facts showing that any Defendant knew a statement was false or acted with reckless disregard for the truth. (Dkt. 49 at 10.) Instead, it offers only conclusory assertions of "actual malice." (Dkt. 7 at ¶ 80.) That is insufficient as a matter of law.

*Third*, Plaintiff mischaracterizes Defendants' argument by suggesting that it relies on "academic judgment" as a categorical shield. (Dkt. 49 at 8.) That is incorrect. The point is more fundamental: the statements Plaintiff challenges are not actionable in the first place because they are evaluative opinions, not false statements of fact.

Plaintiff's Opposition thus highlights the core defect in Count II. He asks the Court to consider facts he did not plead, to treat professional opinions as actionable statements of fact, and to infer falsity and malice from his disagreement with Defendants' academic judgment. Plaintiff has not pled a viable defamation claim and, accordingly, the Court should dismiss Count II.

7

**III.     Count III (FMLA) Fails Because Plaintiff Does Not Plead Retaliation and Does Not Plausibly Allege Interference**

As with his other claims, Plaintiff seeks to use his Opposition to expand his FMLA claim beyond what he pled in his Complaint. In his Opposition, he reframes Count III as alleging both "FMLA Interference and Retaliation," even though the Complaint pleads only interference. (Dkt. 7 at ¶ 85; Dkt. 49 at 10.) The Complaint does not allege that any Defendant took adverse action because Plaintiff exercised FMLA rights — an essential element of a retaliation claim. (*See generally* Dkt. 7.) Instead, Plaintiff asks the Court to infer a new theory from argument. That is not permissible. As explained above, Plaintiff must plead his claims with facts in the Complaint, not attempt to add new facts through briefing.

Even as to interference, Plaintiff's allegations fall short as a matter of law. The Complaint establishes that Plaintiff received the core benefit that the FMLA offers: leave. The Complaint alleges that the University approved his leave and that he took it. (Dkt. 7 at ¶¶ 64-66.) The Complaint does not allege that the University denied his leave, delayed it, discouraged him from taking it, or prevented him from taking the full leave to which he was entitled. (*See generally* Dkt. 7.) Those omissions are decisive. The FMLA protects an employee's right to take leave — it does not insulate employees from the natural administrative consequences associated with leave status. *Simpson v. Office of the Chief Judge*, 559 F.3d 706, 712-13 (7th Cir. 2009).

To avoid the obvious fact that Plaintiff took the FMLA leave he requested, he casts routine aspects of leave administration as "interference." Specifically, he points to restrictions on office access, expense processing, and similar administrative matters. (Dkt. 49 at 10-12.) But those allegations do not describe interference with FMLA rights because they do not plausibly suggest that Plaintiff's ability to take leave was impaired in any way.

Plaintiff's Opposition further confirms that he has not plausibly pled FMLA interference. In his Opposition, he asserts that during others' FMLA leaves, "work expenses are routinely processed," "office access is routinely granted," and "campus access is routinely preserved" during leave. (Dkt. 49 at 10-12.) The Complaint, however, contains no such allegations. (*See generally* Dkt. 7.) Nor does the Complaint allege any facts establishing what policies applied, whether Plaintiff was treated differently from similarly situated employees, or how any such differences affected his ability to take leave. (*Id.*) Not only should the Court reject Plaintiff's attempt to "plead" new facts in his Opposition, but—even if he had pled these facts - they do not establish FMLA interference.

The same is true of Plaintiff's assertion that Defendants "effectively shortened" his leave. (Dkt. 49 at 9.) The Complaint contains no allegation that his leave was shortened or that he was prevented from taking it in full. (*See generally* Dkt. 7.) Nor does it allege that any administrative requirement, such as vacating an office, interfered with his ability to take leave or caused him to return from leave early. (*Id.*) Absent factual allegations tying a condition of leave to the denial or impairment of FMLA benefits, there is no plausible interference claim.

Plaintiff's response to Defendants' individual-liability argument fares no better. Liability under the FMLA requires that an individual defendant exercise control over the plaintiff's FMLA rights — such as authority to grant, deny, or alter leave. Defendants identified that standard and explained why the Complaint fails to satisfy it. (Dkt. 47 at 14.) Plaintiff does not meaningfully refute Defendants' challenge to individual liability. Instead, he asserts in formulaic terms that Defendants "communicated, processed, imposed, or enforced" leave conditions. (Dkt. 49 at 12.) That is not enough. The Complaint does not identify which Defendant exercised control over Plaintiff's leave or allege facts showing that any individual approved, denied, altered, or interfered

9

with his leave. *See Alito v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018).

Finally, Plaintiff suggests that Defendants bear the burden of identifying which individuals exercised control over his leave. That inverts the pleading standard. At this stage, it is Plaintiff's obligation to allege facts supporting each element of his claim, including that a particular defendant exercised authority over his FMLA rights. He cannot avoid dismissal by pointing to gaps in his own pleading and labeling them "factual disputes." Taken together, Plaintiff's FMLA allegations describe his dissatisfaction with how the University administered his leave. They do not allege denial of leave, impairment of leave, or retaliation for taking leave. Because the Complaint does not plausibly allege FMLA interference — and does not plead retaliation at all — the Court should dismiss Count III.

### CONCLUSION

Plaintiff's Opposition confirms what the Complaint itself makes clear: he has not pled any viable legal claim. Rather than defend the allegations as written, Plaintiff attempts improperly to bolster them with new facts in his Opposition, which the law does not permit. Even accepting the Complaint's allegations as true, they do not plausibly establish a breach of the duty of fair representation, defamation, or interference with FMLA rights. Nor can Plaintiff cure those deficiencies by attempting to use his Opposition to graft new facts onto his inadequate Complaint. Because Plaintiff has failed to allege facts sufficient to state any claim for relief, the Court should dismiss the Complaint.

Dated: June 5, 2026

Respectfully submitted,

By: */s/ Jacob M. Rubinstein*
Jacob M. Rubinstein
Cozen O'Connor
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
312-382-3100
jrubinstein@cozen.com
*Attorney for University Defendants*

11

**CERTIFICATE OF SERVICE**

I certify that, on June 5, 2026, a true and correct copy of the foregoing Defendants' Reply Memorandum in Support of Motion to Dismiss was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois via the CM/ECF system, which will cause service to be made in accordance with the Court's electronic filing procedures

By:     */s/ Jacob M. Rubinstein*
        Jacob M. Rubinstein

12