**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SRINIVASAN VASUDEVAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 26 C 211** |
| | ) | |
| **THE UNIVERSITY OF CHICAGO,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON MOTION TO DISMISS AMENDED COMPLAINT

Srinivasan Vasudevan has taught at the University of Chicago since 2019. As of the date he filed this lawsuit, he held the title of Assistant Instructional Professor in the University's department of economics. Vasudevan is also a member of Local 73 of the Service Employees International Union, which represents certain instructional personnel at the University.

Vasudevan has filed a *pro se* lawsuit against the University, Local 73, and nine individuals employed by the University. In his amended complaint, Vasudevan asserts claims against the University and Local 73 for, respectively, breach of the collective bargaining agreement of which he is a beneficiary and breach of the union's duty of fair representation (count 1); against six University employees for defamation *per se* (count 2); and against the University and four employees for interference with his FMLA rights (count 3).

The defendants have moved to dismiss for failure to state a claim. Vasudevan initially moved for leave to further amend his complaint, but the Court determined to

hold that motion in abeyance while dealing with the defendants' motion to dismiss. In this order, the Court rules on the defendants' motions to dismiss the amended complaint.

In deciding a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded factual allegations in the complaint and draws reasonable inferences in the plaintiff's favor. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the 2 alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff must provide "some specific facts to support the legal claims asserted" and may not rely on conclusory allegations to make his claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

**1.      Count 1 – CBA/duty of fair representation claim**

In count 1 of his amended complaint, Vasudevan asserts what is called a "hybrid" claim under section 301 of the Labor Management Relations Act, against his employer and the union that represents him. To prevail on a claim of this type, an employee must prove that his union breached its duty of fair representation (DFR) and that his employer breached the collective bargaining agreement. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 165 (1983); *Bell v. DaimlerChrysler Corp.,* 547 F.3d 796, 804 (7th Cir. 2008). The defendants argue that Vasudevan has not adequately alleged a breach of the union's duty.

The Court takes the following factual allegations from the amended complaint, summarizing them because the complaint is very detailed. Vasudevan's claim stems

from a performance review conducted in or about October 2024.  During the autumn quarter of that year, he was teaching two economics courses.  Arrangements were made to conduct a classroom observation that was part of the annual performance review process.  A written report of the observation was prepared and given to Vasudevan.  He does not attach the report to his complaint, but it was apparently unfavorable, and one or more of the observers communicated to Vasudevan that they would recommend against renewing his contract.

On November 21, 2024, Vasudevan called Local 73 and asked to submit a grievance.  Evidently a union representative filled out the grievance form and sent it in.  Vasudevan says that it misspelled his last name in the "name of employee" field, mistakenly put another person's name in the "statement of grievance" field, and omitted one of the classroom observer's names.  The gist of the grievance was that the observation had been done without the CBA-required fourteen days' advance notice and identification of the observers.

In early December, there was an initial meeting between Vasudevan, a "hearing officer," and two representatives of the University.  Vasudevan requested a do-over of the observation consistent with his understanding of the CBA's requirements.  The University then filed an answer to the grievance, stating among other things that Vasudevan had been notified of the identity of three of the five observers and that knowledge of the others would not have changed anything in his preparation.  It characterized Vasudevan's grievance as based on a "procedural technicality."  *See* Am. Compl. ¶ 38.

In January 2025, the report on the classroom observation was submitted to a

3

department faculty meeting, but according to Vasudevan his response was not provided at the meeting even though the accompanying memo said it was. Vasudevan also says that the performance review committee's memo referenced a summer 2024 incident alleging that Vasudevan had not reported a student's suspected cheating to the undergraduate office as required but instead had conducted his own investigation and, in doing so, had contacted another student in a way that disclosed the involved student's identity. This, it was said, had led to threats of a lawsuit.

A request not to promote Vasudevan to the position of associate instructional professor was made and ultimately was submitted to the office of the provost. After further exchanges, Vasudevan asked for a meeting with the department chair and an assistant dean to discuss informal resolution. That meeting was held via Zoom in March 2025. It did not result in a resolution, and in April 2025 Vasudevan was given notice via e-mail that he had not met the standard for progression. The e-mail attached a proposed "terminal year contract," which the Court takes to mean a contract for one final year before separation.

Vasudevan filed a second grievance in April 2025. He says that the union misspelled his name once on this grievance too. The grievance asserted that the University had not followed certain CBA-required steps during the performance review process. The primary requested remedy was, again, a do-over of the performance review. A grievance meeting was held but did not result in a favorable resolution. Vasudevan alleges that he requested a "step 3" grievance meeting but did not get one.

According to Vasudevan, Matthew Carpenter, Local 73's general counsel, advised that he would not be attending Vasudevan's grievance arbitration hearing.

4

Carpenter said the grievances likely would be denied, and he urged Vasudevan to reach a settlement, saying that the union would not appeal if he got an adverse decision. A mediation before the arbitrator was held in early August 2025. Vasudevan says that during the mediation, settlement proposals were transmitted without his authorization. Ultimately a term sheet was prepared, which two union staff attorneys urged Vasudevan to accept "under time pressure." Am. Compl. ¶ 53. A little over two weeks after the mediation, one of the union staff attorneys emailed Vasudevan a draft settlement agreement, saying he had until September 7—seventeen days—to review and sign it. Vasudevan says he replied that the draft agreement differed from the terms he understood from the mediation. Later the staff attorney told Vasudevan he needed to get the signed agreement back by September 6, which, he says, is four fewer days than what the CBA requires.

Vasudevan ultimately declined to sign the proposed settlement agreement and asked to proceed with the arbitration. He says that the staff attorneys then told him that the grievance would be withdrawn unless he agreed to "the terms mutually agreed to at mediation." *Id.* ¶ 60. He was advised that proceeding to arbitration was the union's decision, not his. Vasudevan says the staff attorney also accused him of having "denigrated Local 73" and having "belittled" the other staff attorney. *Id.* ¶ 61. He ultimately filed with the National Labor Relations Board unfair labor practice charges against the University and Local 73.

After reciting these facts—which, again, the Court has summarized from Vasudevan's extremely detailed rendition—Vasudevan alleges that the University breached the CBA by "conducting Plaintiff's performance review in a manner that

violated mandatory procedural protections, including classroom-observation requirements, review notice and response requirements and grievance-processing obligations." *Id.* ¶ 74.  He alleges that Local 73 violated its DFR by "misfiling grievances, failing to correct known errors, discouraging or blocking Step 3 review, threatening withdrawal of grievances to coerce settlement, and refusing to pursue arbitration despite Plaintiff's timely requests." *Id.* ¶ 75.

These contentions do not state a viable DFR claim against the Union.  A DFR claim requires adequately pleading, and ultimately proving, that Local 73 acted in a way that was arbitrary, discriminatory, or in bad faith.  *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  "A union's actions are arbitrary only if the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003).  This is determined under an objective standard.  *Id.* The standard is "extremely deferential," and a court may not substitute its own judgment for that of the union "even if, with the benefit of hindsight, it appears that the union could have made a better call." *Id.* (cleaned up).  Mere negligence, "even in the enforcement of a collective bargaining agreement," is not sufficient.  *Id.* (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73 (1990)).

Vasudevan's allegations come nowhere close to clearing this threshold.  First of all, the spelling errors in the grievances are about as immaterial as one can imagine. There is no basis to support a determination that they influenced the outcome of the grievances or that they reflected anything other than—at worst—carelessness.  Second, the union's claimed refusal to take the grievances to arbitration does not, without more, give rise to a viable claim.  It is true that "a union may not arbitrarily ignore meritorious

6

grievances or process them in a perfunctory fashion." *Neal*, 349 F.3d at 369 (quoting *Vaca*, 386 U.S. at 191). But it is not required to take all member grievances to arbitration. *Id.* Rather, a union "must provide some minimal investigation of employee grievances." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). And "only an egregious disregard for union members' rights constitutes a breach of the union's duty." *Id.* (cleaned up).

Based on Vasudevan's allegations, there is no basis for a determination that Local 73 acted arbitrarily or in bad faith. Vasudevan's own allegations reflect that the union's representatives did not give him the brush-off but instead pursued his grievances all the way up to the point of arbitration and then attempted to reach a resolution via mediation. There is nothing to suggest that the Union declined to pursue arbitration arbitrarily or in bad faith, or for any reason other than an honest assessment of the merits of the grievance. "[D]eclining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation"; there has to be a showing that this was done arbitrarily, in bad faith, or based on a discriminatory motive. *Yeftich v. Navistar, inc.*, 722 F.3d 911, 916 (7th Cir. 2013). The facts alleged by Vasudevan do not support a contention that this was the case here; a union appropriately may consider whether it is a "wise allocation of its own resources," *id.* at 917, to pursue through arbitration grievances that it believes have a slim chance of success. The Court notes in this regard that one would be hard-pressed to say that the claimed CBA breaches that Vasudevan cites—including that he got a few days less than the required fourteen days advance notice of the classroom evaluation and that he was told in advance the identity of only three of the observers, not all five—come

7

anywhere close to constituting *material* breaches of the CBA. Finally, Vasudevan alleges no facts that would support the proposition that the union treated his grievance in a discriminatory manner vis-à-vis other similar grievances.

For these reasons, count 1 of Vasudevan's amended complaint fails to state a claim.

### 2. Count 2 – defamation *per se*

In count 2 of the amended complaint, Vasudevan asserts a claim against a number of University personnel (Min Sok Lee, Victor Lima, Derek Neal, Eric Richert, Azeem Shaikh, and Kotaro Yoshida) for defamation *per se*. To a state a claim for defamation under Illinois law, a plaintiff must allege "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). A defamatory statement is one that "harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.*

Only statements of fact—as opposed to statements of opinion—may constitute actionable defamation. *See, e.g., Sullivan v. Conway,* 157 F.3d 1092, 1097 (7th Cir. 1998) (Illinois law; involving statement that plaintiff was a poor lawyer). Whether a statement is an opinion or assertion of fact is a question of law. *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (Illinois law). In deciding this, a court asks "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is factually verifiable; and (3) whether the literary or

social context signals that [the statement] has factual content." *Id.* (internal quotation marks omitted). "[I]f it is plain that the speaker is expressing a subjective view . . ., the statement is not actionable." *Id.* at 1129-30.

Vasudevan asserts a claim of defamation *per se*, which lies if a statement's harm is obvious and apparent on its face*. Id.*; *see* Am. Compl., count 2, title. In Illinois, only five categories of statements are considered defamatory *per se*:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* at 491–92, 917 N.E.2d at 459. Vasudevan's amended complaint references the third (and perhaps the fourth) category: he alleges that the defendants made "statements of fact concerning Plaintiff that imputed a lack of integrity, competence, or fitness to perform Plaintiff's profession . . . ." Am. Compl. ¶ 79.

In identifying the statements that he contends were defamatory *per se*, Vasudevan refers to paragraphs 40 through 43 of the amended complaint. *See* Am. Compl. ¶ 79. The only statements of fact about Vasudevan referenced in those paragraphs are that he failed to report suspected cheating to the undergraduate office; that he conducted an investigation of the same himself; that during that investigation, contacting another student in a way that disclosed the identity of the accused student; and that he refused to meet with the co-directors of undergraduate studies to discuss the classroom observation of his teaching. *See* Am. Compl. ¶¶ 42, 43. Assuming for purposes of discussion that the defendants' claimed statements that Vasudevan did these things were false, none of the statements imputes a lack of integrity, competence,

or fitness on his part to perform his profession. Instead, they involve specific alleged missteps. Thus they do not qualify as defamatory *per se*.

For these reasons, count 2 fails to state a claim for defamation *per se*.

### 3. Count 3 – FMLA interference claim

The third and last claim in Vasudevan's amended complaint is a claim for interference with FMLA rights. *See* Am. Compl., count 3, title & ¶ 85. This requires him to adequately allege, and ultimately prove, that: (1) he was eligible for FMLA protection; (2) the University was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice; and (5) the University "interfered with, restrained, or denied FMLA benefits to which he was entitled." *Myers v. Sunman-Dearborn Cmty. Schs.*, 142 F.4th 527, 533 (7th Cir. 2025) (internal quotation marks omitted).

The University contends that Vasudevan has not adequately alleged the last of these elements. On this, paragraph 85 of Vasudevan's amended complaint refers back to paragraphs 64 through 69. There he alleges that in September 2025, he asked to meet with the University's leave administrator "to discuss applicable leave policies." Am. Compl. ¶ 64. He alleges that without hearing anything from him, the administrator told others, including the department chair, that he would be taking medical leave. *Id.* When Vasudevan met with the administrator, she advised him that if he took leave he would not have access to his office, the library, funding, or participation in professional or academic activities during his leave. *Id.* ¶ 65. He alleges that the forms were confusing and that although his leave request was approved via e-mail he did not get a "formal FMLA Designation Notice." *Id.* ¶ 66. Certain requested professional amounted

10

to a reduction of his pay. *Id.* ¶ 67. He was also "removed . . . from a year-long academic working group and related subcommittee roles" during the leave period. *Id.* ¶ 68. And he was advised that he could not interview teaching assistant applicants for the following term until he returned to work. *Id.* ¶ 69.

The problem with Vasudevan's claim is that each of these points—as Vasudevan himself describes them in his complaint—involves a matter inherent in being off work, which is exactly the status that Vasudevan sought in when he asked to go on leave. He cites no authority for the principle that an employer is required to provide an employee who is on FMLA leave with the benefits associated with working (aside from health insurance, which the FLMA expressly covers, *see* 29 U.S.C. § 2614(c)). An employee who is on FMLA leave cannot be treated worse in this regard than an employee on some other type of leave, *see* 29 C.F.R. § 825.220(c), but Vasudevan does not allege anything of that sort.

On the present record, Vasudevan has not plausibly alleged interference with taking FMLA leave: he does not allege that these restrictions interfered with his leave or deterred him from taking or staying on leave. Indeed, Vasudevan's own complaint alleges that he took the requested leave. For these reasons, count 3 fails to state a viable claim.

## Conclusion

For the reasons stated above, the Court grants the University defendants' motion to dismiss [dkt. 32, 46] and Local 73's motion to dismiss [dkt. 44] Unless plaintiff files, by July 13, 2026, a motion for leave to amend that includes a viable amended complaint including at least one claim over which the Court has jurisdiction, the Court will enter

judgment against him. The Court notes that plaintiff's motion to file a second amended complaint [dkt. 21] is still pending, but the Court will not hold plaintiff to that proposed amendment at this point. Plaintiff should determine whether he wishes to proceed with that proposed amendment—in which case he should simply make a filing by the deadline saying that he wishes to proceed on the existing motion to file the second amended complaint—or instead wishes to file a new motion to amend, in which case he should file that motion, attaching his new proposed second amended complaint. The telephonic status hearing set for July 1, 2026 is vacated and reset to July 20, 2026 at 9:00 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date: June 29, 2026

_____
MATTHEW F. KENNELLY
United States District Judge

12